McPHERSON (KITTY v.). See Case No. 7,-860.

McPHERSON (TALBOT v.). See Case No. 13,728.

McPHERSON (UNITED STATES v.). See Cases Nos. 15,703 and 15,704.

McPORTER, The. See Case No. 6,288, note.

## Case No. 8,923.

### McQUAIN v. MELINE.

[4 Quart. Law J. 28.]

District Court, W. D. Virginia. Spring Term, 1858.

TAX TITLES—EJECTMENT—EVIDENCE.

1. Under the provisions of the Code of Virginia, when a sale of land has been made by a sheriff for the non-payment of taxes, and a conveyance has been made by the clerk of the county court, and recorded, such title as was in the person assessed with the taxes, at the beginning of the year for which the assessment was made, is vested in the purchaser, notwithstanding any irregularity in the proceedings, unless it appear on the face thereof.

2. Though the party in whose name the land was assessed, after the assessment, and before the sale, died, and under a decree against his heirs, the land was sold before the conveyance was made by the clerk in pursuance of the sale for the non-payment of taxes, the sale for the taxes will prevail against the sale under the decree.

3. The purchaser at the sale, for the non-payment of taxes, need not show the proceedings previous to the deed from the clerk to him, in order to recover on such title. The deed itself, when regular, is prima facie evidence that the proceedings were regular, and that the title passed.

4. The assessment of the land on the commissioner's book with the taxes, for the non-payment of which it is sold, is not a circumstance in relation to the sale, which is required to be recited in the deed from the clerk to the purchaser.

5. If the assessment be such a circumstance, a recital that the land was returned delinquent for the non-payment of the taxes, necessarily implies such previous assessment, and is sufficient.

At law.

John S. Hoffman and Benjamin Wilson, for plaintiff.

William A. Harrison and Charles T. Harrison, for defendant.

BROCKENBROUGH, District Judge. This is an action of ejectment, originally brought in the circuit court of Gilmer, by Hugh McQuain against George Spurgeon, the tenant in possession, to recover a tract of 130 acres of land, situated in the county of Gilmer, on the Bear Fork of Cove creek. James F. Meline, the lessor of the original defendant, and a citizen of the state of Ohio, appeared, and was made defendant in place of his lessee, in

pursuance of the provision of the Code of Virginia, p. 558, § 5. At the time of his appearance, the new defendant pleaded the general issue, and presented a petition to the state court, alleging that he was a citizen of the state of Ohio, and praying on that ground a removal of the cause to this court, in virtue of the act of congress in such case made and provided. The requirements of the act of congress having been complied with, the cause was regularly transferred to the docket of this court.

The cause comes on now to be heard on a case agreed between the counsel for the parties respectively, the important facts of which will here be stated. On the 30th of November, 1838, a patent was issued from the land office of Virginia, granting the land in controversy, described as containing 130 acres, situated in Lewis county, on Big Cove creek, and setting out the metes and bounds thereof, to one Cummins E. Jackson, in absolute fee simple. At a subsequent period, the legislature of Virginia created the county of Gilmer, embracing that portion of the county of Lewis in which the land in controversy is situated. The identity of the land granted to Jackson with that in controversy between the parties here, is a fact found by the special case agreed between them.

The plaintiff claims under a tax title deed, made to him on the 20th day of August, 1853, by C. B. Conrad, clerk of the county court of Gilmer, conveying the land in controversy to the plaintiff, as purchaser thereof, at a sale made by the sheriff of Gilmer, of said land, as delinquent for the non-payment of taxes due by C. E. Jackson, to the commonwealth. The conveyance was made by the clerk in virtue of the sixteenth section of chapter 37, p. 203, of the Code of Virginia. The fact of the due election and qualification of the grantor as clerk of Gilmer, is established by the case agreed. The material recitals in the deed are that it appeared from the papers in the clerk's office of Gilmer county, that the land in controversy, together with four other tracts conveyed by the same deeds, was included in a list of delinquent lands delivered by the auditor of public accounts, to the sheriff of Gilmer, to be sold by him, in the year 1850; that it was reported as being delinquent for the non-payment of taxes due thereon for the years 1845, '46, '47, '48 and '49; that the said list was copied three times, and that one copy was posted at the front door of the court-house, with a notice subjoined that the real estate therein mentioned, would be sold at September court, 1850, of Gilmer, as appeared by a copy filed in the said clerk's office; that it also appeared by a list of the lands reported as having been sold by said sheriff, in the months of September and October, of the last mentioned years, and filed in the clerk's office, that the land in controversy, described as number 5, at the September term of the court, 1850, and on the 23d day of that month, was sold for the amount of tax due thereon, being 76 cents, and that the plaintiff became the purchaser thereof for that sum; that the tract in controversy was returned delinquent in the name of Cummins E. Jackson, and that the purchase money, fees and commisssion, were paid by the plaintiff to the deputy sheriff who made the sale, as appeared by his receipts in the hands of the plaintiff; that two years had elapsed since the sale, and the land had not been redeemed; that the whole tract was sold; that the plaintiff after the expiration of two years obtained from the surveyor of Gilmer a report of the tract so sold, which was presented to the county court of Gilmer, at its August term, 1853, and no objection appearing to it, the court ordered it to be recorded, which was accordingly done. The land was conveyed by metes and bounds, conforming to those set out and described in the original patent from the commonwealth to Cummins E. Jackson, of November, 1838, before referred to. The deed was acknowledged by the grantor before a justice of the peace for Gilmer, and admitted to record on the day of its date.

The defendant claims title to the land in controversy under a judicial sale made under a decree of the circuit court of Lewis county. On the 21st of June, 1848, certain creditors of C. E. Jackson filed their bill in chancery in the circuit court of Lewis county against him and others, seeking to subject his real estate to sale for the payment of his debts, he being then a non-resident of the state of Virginia. Pending the said cause C. E. Jackson died intestate, and the cause was revived against his heirs at law. On the 26th of March, 1853, the court pronounced a decree directing the real estate which had descended to the heirs at law of the debtor, to be sold by certain commissioners named in the decree. The real estate embracing the land in controversy here, was sold by the commissioners on the 20th of August, 1853. Joseph H. Dis Debar became the purchaser of the last mentioned tract at the price of $400.50, which sale was confirmed by the court by a decree rendered on the 27th of August, 1853; and by another decree rendered on the 6th of September, 1854, the commissioners were ordered to execute a deed conveying said land to Debar when he should pay the purchase money. Cummins E. Jackson died in California in December, 1849. It is ascertained by the special case that the land in controversy was worth $400 at the time of the sale made by the sheriff of Gilmer, for the taxes. The purchaser at the judicial sale sold, or contracted to sell, the said land and make a deed of conveyance thereof, to the defendant Meline, and the original defendant Spurgeon took possession of the land as tenant of the present defendant, Meline.

The general question of vital interest resulting from the facts thus agreed is, was the deed of the 26th of August, 1853, from the clerk of Gilmer, effectual to convey the legal

title to the land in question, previously vested in C. E. Jackson by the commonwealth's patent of November, 1838, to the plaintiff here or not? If that deed was valid and effectual for that purpose, then, although its execution was subsequent in point of time to the rendition of the decree of the circuit court of Lewis, directing a sale of said land to satisfy the claims of the creditors of the patentee Jackson, yet it operated by relation to vest in the grantee such estate as was vested in the party assessed with the taxes, on account whereof the sale was made at the commencement of the year for which the said taxes were assessed, notwithstanding any irregularity in the proceedings under which the said grantee claims title, unless such irregularity appears on the face of the proceedings. Code Va. p. 240, § 22. If, on the other hand, there be any irregularity apparent upon the face of the proceedings, such as the act contemplates, such irregularity vitiated the deed, and made it a simple nullity. Accordingly the whole stress of the able and elaborate argument of the counsel on each side has been directed to this point, the counsel for the plaintiff maintaining the validity of the deed, and the counsel for the defendant insisting with great earnestness that it was inoperative and void. It is much to be regretted that, sitting as a federal court, I am called to break the way in the exposition of a most important statute of the state, not heretofore expounded by her own judicial tribunals; and my embarrassment is increased by the consideration that if I err in its interpretation, the error is one which cannot be reversed by writ of error from the supreme court of the United States, the amount in controversy not being sufficient to give jurisdiction to that tribunal. In construing the various sections of this statute which are pertinent to the question presented for solution, I am to place myself in the position of a state court called to expound them, and apply the same construction which that court would apply, as far as that can be ascertained by the light of reason and the analogies of the law; for it is a most wise and salutary provision of the judiciary act of 1789 [1 Stat. 73], that the laws of the several states shall be rules of decision for the federal courts exercising jurisdiction within the territorial limits of such states respectively. Had these sections of the act of 1850 been expounded by the highest judicial tribunal of the state, that exposition would furnish an authoritative rule for the guidance of the judgment of this court, for it is well settled that the decision of the highest appellate court of a state, involving the construction of the statute law of the state, is the highest evidence of that law, and that the federal courts of every degree, including the supreme court of the United States, as well as all subordinate tribunals, are absolutely bound by such decision. But although the recent law in relation to the sale of lands delinquent for the non-payment of taxes due to the state.

has not yet been expounded by her own courts, the provisions of former laws on the same subject, and very similar to the law now to be interpreted, have been fully expounded by the court of appeals in several recent cases, and I derived great aid in reaching a conclusion satisfactory to myself, from the light furnished by the luminous opinions of that court in the cases of Flanagan v. Grimmet, 10 Grat. 421, and Hobbs v. Shumates, 11 Grat. 516.

It is insisted by the counsel for the defendant, that there is an irregularity on the face of the proceedings sufficient to vitiate the deed, under which the plaintiff claims. It is said there is no recital or averment in the deed that the land in question had ever been assessed at all. It is certainly true that there is no such averment in express terms. The statute requires that the deed of the clerk conveying land sold for the non-payment of taxes to the purchaser, shall set forth all the circumstances appearing in the clerk's office in relation to the sale. Another statute requires that the assessors of the lands of the commonwealth deposit in the clerk's office of their respective courts lists, showing the assessed value of all the lands in the county, and the law presumes, in the absence of direct proof, that the public duty thus enjoined has been properly and rightfully performed. There was, then, in the clerk's office of Gilmer county, on the 20th day of August, 1853, record evidence that the land conveyed by the clerk to the plaintiff had been regularly assessed, and the amount of tax with which it had been charged. Was the fact of such assessment, one of the circumstances appearing in the clerk's office in relation sale, the failure to set forth which vitiated the deed? If it was necessary to set it forth in the deed, has not this been substantially done in averring that the land in controversy was delinquent for the non-payment of taxes due thereon, and the amount of those taxes? I shall briefly address myself to each of these questions in the order stated.

Does the omission to aver in express terms, in the deed, that the land sold as delinquent for the non-payment of taxes was duly assessed, vitiate the deed? There can be no question that the assessment of the land, as a matter of fact, lies at the foundation of the plaintiff's title, for if there was no assessment, no taxes were due, and if no taxes were due there could be no delinquency for their non-payment. A sale, therefore, and conveyance of land for non-payment of taxes without a previous assessment would be a simple nullity. But though there must necessarily be an assessment in all such cases, it is one of those circumstances appearing in the clerk's office in relation to the sale, which it is indispensable to aver in the deed to give it validity. The case of Flanagan v. Brimmet is a strong authority in support of the negative of the question. This case required the court to construe the act of the 9th of

February, 1814, respecting the sale of lands delinquent for the non-payment of taxes. The act was passed to remedy evils growing out of past legislation, and the construction put upon the former laws on the same subject by the court of appeals. Very stringent rules had been previously applied by the court against the purchaser of a tax title. "When the act of February, 1814" [Laws (Va.) 1813–14, p. 15], says the court, "was enacted, the legislature was fully aware of the construction which had uniformly been put on laws of this description. Few principles of law are more firmly established, and from their influence on the transactions of others, more widely known, than that where the validity of a deed depends upon an act in pais, the party claiming under it is bound to prove the performance of the act; that in the case of a naked power not coupled with an interest, the law requires that every prerequisite to the exercise of such power should precede it; that the claimant under a sale made to enforce a forfeiture must show that the law has been strictly complied with; that the recitals in a deed of an officer selling for taxes were not even prima facie evidence of the regularity of his proceedings, and that these facts must be proved by evidence aliunde." The court held that these rules were essentially modified by the act of 1814. That act required the sheriff to advertise a sale of delinquent lands at the May, June and July terms of the court of his county, and to publish the advertisement at least once every week for two months preceding the time of sale, in some newspaper published in the city of Richmond. It also directed him to execute a deed to the purchaser at such sale, reciting the circumstances thereof, and setting forth particularly and truly the amount of the purchase money; and that after the time of redemption allowed had elapsed, the regularity of the proceedings under which the purchaser at the sale claims title shall not be questioned, unless such irregularity appears on the face of the proceedings. In the construction of this act it was held that by the circumstances of the sale, which are recited in the deed, was not meant all the steps to be taken by the various officers which preceded the sale, but the circumstances attending the sale itself, viz: that the sale was made at the time and place prescribed for the sale of lands returned delinquent; if less than the whole lot or tract was sold, how much was sold; who was the purchaser, and the amount of the purchase money; and that it was not necessary that the deed should recite that the land had been advertised; that even if an insufficient advertisement was recited. it would not be an irregularity on the face of the proceedings which would avoid the deed, but any recital of that fact being unnecessary, the recital of an insufficient advertisement was mere surplusage. not affecting the validity of the deed. The deed to the pur-

chaser was held to be valid, though there was no express recital of the fact that the land had been assessed. The attention of the court does not seem to have been called to this omission, but it is not to be presumed that an omission fatal to the pretensions of the purchaser's claim would have escaped the vigilance of both bench and bar, in a case so elaborately discussed by each. The only reasonable deduction to be drawn from the case, touching the point under consideration, is, that the recital, in express terms, of the fact of assessment was not one of the circumstances of the sale, required to be recited in the deed to the purchaser. Has the law of 1850 made any change in this respect? The language of the two acts are very similar, but not identical. By the act of 1814, the sheriff who conducted the sale was required to execute the deed to the purchaser; by that of 1850, the clerk of the county is required to make it: by the former, it was contemplated that the sheriff should make the deed before the expiration of the two years allowed for the redemption of the land; by the latter the clerk is required to make the conveyance after the expiration of that time: by the former, it is required that the deed recite the circumstances of the sale, and set forth particularly and truly the amount of the purchase money; by the latter, that the clerk's deed set forth all the circumstances appearing in the clerk's office in relation to the sale. The former act seems to have required a more minute recital than the latter, and this discrimination was not an arbitrary one. The sheriff was required by the former act to recite in his deed all the circumstances attending the sale, which seems to have been reasonable as he was personally cognizant of those circumstances; but by the latter, the clerk is only required to recite those circumstances, in relation to the sale, appearing in the clerk's office. We have seen from the case of Flanagan v. Grimmet, that the recital of the fact of assessment was not one of the circumstances of the sale required to be expressly recited in the sheriff's deed; and if not, I can conceive of no reason why it should be so deemed under the act of 1850, which was designed to restrict rather than enlarge those recitals. The assessment, though the remote foundation of the purchaser's title, under either, cannot be affirmed to be a circumstance having immediate reference to the sale. It is an indispensable element of title in either case, but not a circumstance in relation to the sale itself, within the meaning of the act. But even if it were so, I apprehend that the fact that the land was regularly and duly assessed is substantially averred in the deed in this case. The recital that the land was delinquent for the non-payment of the taxes due upon it, not by reasonable intendments only, but by necessary implication, involves the averment that the land was assessed. The assessment of land by the prop-

er officers of the government is the only mode known to the law, by which the amount of tax chargeable on the lands, is fixed and determined. Until the assessment, the amount of tax due upon the lands is altogether indeterminate and uncertain, and no demand or levy for the tax, can lawfully be made, until the quantum of tax has been fixed and ascertained, in the mode prescribed by law. Lands may be assessed without a subsequent delinquency, because this may be prevented by the payment of the taxes, but the converse of the proposition is not true. There can be no delinquency without a previous assessment, and when it is affirmed, therefore, that lands become delinquent for the nonpayment of taxes, it is affirmed, by necessary implication, that the lands had been previously assessed. The silence of the court of appeals in the two cases of Flanagan v. Grimmet and Hobbs v. Shumates, above cited, as to the omission to recite expressly that the lands had been assessed, coupled with the decision in each case, that the deeds to the purchaser were valid to vest a good prima facie title in him, and such title, as at the time the land was returned delinquent was vested in the person in whose name it was so returned, seems pregnant with the admission, that the delinquency necessarily presupposes a previous assessment.

During my investigation of this case, I have felt a strong desire to sustain the title of the defendant, who appears to have acted in good faith, and to have paid full value for the land, rather than that of the plaintiff, who purchased it for a song. But it is the business of courts to declare and not to make the law, and as the plaintiff seems to have acquired his title, in accordance with the prescribed formalities of the law under which he acted, and as the court of appeals, in the two leading cases cited, have sustained the title of purchasers, in cases in which the recitals were much less special than in the case at bar, and in virtue of a statute not at all different in principle from that which is to govern the present case, I am constrained to say that judgment must be rendered for the plaintiff.